# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MICHAEL GREEN,                          )
                                        )
                    Plaintiff,          )          Case No.: 2:15-cv-530-GMN-PAL
          vs.                           )
                                        )                    **ORDER**
AMERICAN FAMILY INSURANCE,              )
                                        )
                    Defendant.          )
_____ )

      Pending before the Court is a Motion for Summary Judgment filed by Defendant American Family Insurance ("Defendant"). (ECF No. 17).  Plaintiff Michael Green ("Plaintiff") filed a Response (ECF No. 20), and Defendant filed a Reply (ECF No. 21).

## I.    <u>BACKGROUND</u>

      This case arises from an automobile accident that occurred in Clark County, NV, on March 2, 2009, when Nikole Gerleman ("Gerleman") rear-ended Plaintiff. (*See* Traffic Incident Report, Ex. C to Def. MSJ 49–53, ECF No. 17).  Gerleman was uninsured at the time of the accident. (*See id.* at 51) (Gerleman cited for violation of "no proof of insurance in vehicle"); (*see also* Ex. 2 to Pl. Resp. 2, ECF No. 20-2) (letter from Plaintiff's attorney to Defendant stating, "[W]e have been unable to locate any insurance coverage for the at-fault party, Nikole Gerleman. . . . we are considering this claim an Uninsured Motorist claim.").  Defendant insured Plaintiff at the time of the accident, and Plaintiff's policy included uninsured motorist coverage with limits of $25,000 for each person. (Family Car Policy ("Policy"), Ex. A to Def. MSJ 16).[1]  The insurance policy contract required Plaintiff to cooperate with Defendant to

---

[1] The Policyholder listed on the Declarations page is Ruby M. Green; however, neither party disputes that Plaintiff was also covered under this policy.

1    determine Plaintiff's damages in the event of injuries from an accident covered by the policy

2    and precluded Plaintiff from suing Defendant until he had fully cooperated. (*Id.* at 25 ¶¶ 6, 9).

3         On March 12, 2009, Defendant first received notice of the accident and potential

4    uninsured motorist claim from Plaintiff's first counsel, Baker Law Offices ("Baker"). (Ex. D to

5    Def. MSJ 56).  Baker's letter also requested a copy of Plaintiff's insurance policy. (*Id.*).  On

6    March 23, 2009, Defendant's Casualty Claim Desk Senior Adjuster Renee M. Inabinet

7    ("Inabinet") responded, indicating that a copy of the policy had been ordered and would be

8    forwarded to Baker upon receipt. (Ex. E to Def. MSJ 58).  On May 18, 2009, Baker sent

9    Defendant a notice that it would no longer be representing Plaintiff. (Ex. F to Def. MSJ 61).

10        On June 4, 2009, ICW Group Insurance Companies ("ICW Group") sent Defendant a

11   letter regarding Plaintiff's Workers' Compensation claim and requesting any information that

12   Defendant might have related to the claim. (Ex. G to Def. MSJ 63).[2]

13        On July 16, 2009, Inabinet sent a letter to Plaintiff asking him to call her regarding his

14   claim. (Ex. H to Def. MSJ 65).  Plaintiff appears to have called Inabinet on July 30, 2009, as

15   Inabinet sent him a letter describing their phone conversation. (Ex. I to Def. MSJ 67).  In this

16   letter, Inabinet stated, "[W]e have provided a certified copy of your insurance policy." (*Id.*).

17   Further, the letter said that she will follow up with him regarding the "status and settlement

18   with ICW Group." (*Id.*).  Inabinet's subsequent three letters to Plaintiff (dated August 29, 2009,

19   December 11, 2009, and August 2, 2010) are all to follow up on the status of Plaintiff's

20   Workers' Compensation claim with ICW Group. (Exs. J, K, L to Def. MSJ 68–73).  No

21   evidence is provided by either party regarding any response from Plaintiff.

22

23   _____

24   [2] Although it is never stated explicitly in any document related to this case, it appears that Plaintiff was driving a
     taxi pursuant to his employment with Whittlesea Blue Cab at the time of the accident.  Further, there is a notable
25   discrepancy with the date on this letter from ICW Group, indicating twice in the letter that the injury occurred on
     May 11, 2003. (Ex. G to Def. MSJ 63).  Neither party appears to notice or dispute this fact, so the Court finds
     this discrepancy to be irrelevant.

On February 9, 2011, Aaron & Paternoster, Ltd. ("A&P")[3] sent Defendant a letter of retained counsel, notifying Defendant that there will be an "Underinsured Motorist Bodily Injury Claim," and asking about Plaintiff's insurance policy.[4] (Ex. O to Def. MSJ 80).  On October 28, 2011, Inabinet sent A&P a letter asking about the status of Plaintiff's filing an Underinsured Motorist claim and requesting the following information:

- Copy of declaration page confirming policy limits of adverse carrier and copy of settlement check with release of all claims for their policy limits. Copy of the Workers [sic] Compensation settlement as well as what was paid.
- Complete medical records for the past five years and /or
- Complete list of medical providers your client has seen in the past five years with his signed medical authorization

(Ex. P to Def. MSJ 83).  This letter also enclosed several related forms for Plaintiff to fill out. (*Id.* at 84–92).

On November 7, 2011, A&P replied back to Defendant stating they had received Inabinet's October 28, 2011 letter, and updating Defendant that they would actually be pursuing an Uninsured Motorist claim (rather than an Underinsured Motorist claim). (Ex. Q to Def. MSJ 94).  A&P's letter included Plaintiff's partially completed medical and employment authorization forms, along with a "Worker Compensation ledger that [A&P] received from ICW Group." (*Id.* at 94–104).  The letter also stated, "We will be submitting our demand shortly." (*Id.* at 94).

On April 5, 2012, Inabinet sent a letter to A&P detailing their phone conversation that day, where she requested "the police report, the estimate and photos of the taxi our insured

---

[3] A&P is actually Plaintiff's third attorney.  Plaintiff's second attorney, Shook and Stone, merely sent Defendant a letter on September 7, 2010, as notification of retention as counsel (Ex. M to Def. MSJ 75), and then a subsequent letter on December 21, 2010, indicating that they no longer represented Plaintiff (Ex. N to Def. MSJ 77).

[4] This letter only requests a copy of Plaintiff's policy "if this is not a Nevada policy" and instead asks "if there are any conditions or terms that we must meet under your insured's policy with your company." (Ex. O to Def. MSJ 80).

driver was operating at the time off loss." (Ex. R to Def. MSJ 106).  In this letter, Inabinet further stated, "As you advised your office is gathering supporting documentation for the demand package.  We look forward to receiving this in hopes of reaching an amicable settlement." (*Id.*).  On April 16, 2012, A&P sent Defendant a letter enclosing the police report and taxi photos requested by Inabinet in her April 5, 2016 letter. (Ex. S to Def. MSJ 108).

On May 1, 2012, Inabinet sent A&P a letter acknowledging receipt of their April16, 2012 letter and explaining Defendant's need for further medical information. (Ex. T to Def. MSJ 121).  Inabinet's letter specifically states:

> As we would like to begin gathering medical information, we need our insured to complete the enclosed and return it.  We will be requesting your client to provide the names, addresses of providers for the five years prior to this loss.  We also will be requesting a copy of the workers [sic] compensation file.  Please advise as to the adjuster handling that claim for your client so that we may forward the medical authorization to that company for a copy of their file.

(*Id.*).  The enclosures with this letter were identical to those of Inabinet's letter dated October 28, 2011, which were returned partially completed by Plaintiff on November 7, 2011. (*See id.* at 121–126); (Ex. P to Def. MSJ 84–92); (Ex. Q to Def. MSJ 94–104).  On July 17, 2012, Inabinet re-sent the identical May 1, 2016 letter, indicating that this was a "Second Request." (Ex. U to Def. MSJ 128).

On November 13, 2012, Defendant's Casualty Claim Desk Senior Adjuster Wade A. Nielsen ("Nielsen") sent A&P a letter explaining that Defendant had "made numerous attempts at contact with your office via phone and written correspondence since April of this year with no response." (Ex. V to Def. MSJ 135).  This letter further stated, "We are closing our file at this time." (*Id.*).  According to Inabinet's Declaration, after Defendant's November 13, 2012 letter, Defendant "did not hear from [Plaintiff] until it was provided notice of this lawsuit . . . on February 23, 2015." (Ex. B to Def. MSJ 47).

On February 20, 2015, Plaintiff initiated this action in state court, alleging three causes of action: (1) Breach of Contract; (2) Unfair Claims Practices Act Violations of Nev. Rev. Stat. § 686A.310; and (3) Breach of Covenant of Good Faith and Fair Dealing. (Compl., Ex. A to Not. of Removal ¶¶ 9–34, ECF No. 1).  Defendant removed the action to this Court on March 23, 2015, (Not. of Removal, ECF No. 1), and Defendant filed its Answer to Plaintiff's Complaint on March 24, 2015, (ECF No. 5).  On August 4, 2015, Defendant filed the instant Motion for Summary Judgment. (ECF No. 17).

## II.   **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

1   *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In

2   contrast, when the nonmoving party bears the burden of proving the claim or defense, the

3   moving party can meet its burden in two ways: (1) by presenting evidence to negate an

4   essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

5   party failed to make a showing sufficient to establish an element essential to that party's case

6   on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–

7   24.  If the moving party fails to meet its initial burden, summary judgment must be denied and

8   the court need not consider the nonmoving party's evidence. *See Adickes v. S. H. Kress & Co.*,

9   398 U.S. 144, 159–60 (1970).

10          If the moving party satisfies its initial burden, the burden then shifts to the opposing

11   party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*

12   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute,

13   the opposing party need not establish a material issue of fact conclusively in its favor.  It is

14   sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

15   parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

16   *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid

17   summary judgment by relying solely on conclusory allegations that are unsupported by factual

18   data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go

19   beyond the assertions and allegations of the pleadings and set forth "specific facts" by

20   producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S.

21   at 324.

22          At summary judgment, a court's function is not to weigh the evidence and determine the

23   truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

24   The nonmoving party's evidence is "to be believed, and all justifiable inferences are to be

25   drawn in his favor." *Id*. at 255.  However, if the evidence of the nonmoving party is "merely

colorable, or is not significantly probative, summary judgment may be granted." *See id.* at 249–50 (citations omitted).

### III.   <u>DISCUSSION</u>

Defendant argues that it is entitled to summary judgment because Plaintiff failed to comply with its insurance policy, which "requires that Plaintiff cooperate with [Defendant's] investigation and to satisfy all conditions of coverage." (Def. MSJ 7:3–7, ECF No. 17). Defendant further contends that it "repeatedly and consistently requested that Plaintiff cooperate with its investigation by providing additional information concerning his claim. . . . [but] Plaintiff never provided this information and never responded to [Defendant's] repeated inquiries." (*Id.* at 7:16–8:4).  Plaintiff responds

Plaintiff responds that he "fully complied with the terms of the policy as of November 7, 2011, but Defendant failed to acknowledge and act reasonably promptly to investigate Plaintiff's claims." (Pl. Resp. 3:26–28, ECF No. 20).  Plaintiff argues that his compliance with the policy and Defendant's alleged bad faith remain as material facts in dispute. (*Id.* at 3:21–23). 3:28–4:1).  Finally, Plaintiff argues that there exist a genuine issue of material fact regarding whether Defendant acted in bad faith when it "repeatedly ignored Plaintiff's communications and failed to make any offer whatsoever on Plaintiff's claim." (*Id.* at 4:17–25).

#### A.  Plaintiff's Statutory Claims

Plaintiff's complaint provides a conclusory allegation that "Defendants violates subsections b, c, d, e and n of N.R.S. 686.310(1)." (Compl. ¶ 21).  These subsections read as follows:

> 1.  Engaging in any of the following activities is considered to be an unfair practice:
> . . .
> (b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.
> (c)  Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

(d) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.

(e) Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.

. . .

(n) Failing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim.

Nev. Rev. Stat. 686A.310.  Plaintiff contends that Defendant violated the Unfair Claims Practices Act by "ignor[ing] Plaintiff for ten months, between January 6, 2011 and October 28, 2011, when they requested the information which was immediately provided to them only a week later." (Pl. Resp. 3:28–4:1).  This sentence is the only factual support that Plaintiff provides for this claim, which is insufficient given the many facts on the record showing that Defendant acted promptly on communications, including sending letters multiple times when Plaintiff failed to respond. (*See, e.g.*, Exs. J, K, L to Def. MSJ 68–73); (*see also* Exs. T, U, V at 120–135). *Id.* at 3:25–4:6).  Plaintiff's other assertions are general, conclusory, and recite statutory requirements without any actual support.  Accordingly, there are no genuine issues of material fact, and Defendant is entitled to summary judgment on Plaintiff's Nevada Unfair Claims Practices Act claims.

### B.  Plaintiff's Contractual Claims

"An insurance policy is a contract." *Senteney v. Fire Ins. Exch.*, 707 P.2d 1149, 1150 (Nev. 1988).  A court "should not rewrite contract provisions that are otherwise unambiguous." *Id.; Ellison v. Cal. State Auto. Ass'n*, 797 P.2d 975, 977 (Nev. 1990) ("[C]ontracts will be construed from the written language and enforced as written.").  In Nevada, contractual construction is a question of law and "suitable for determination by summary judgment." *Ellison*, 797 P.2d at 977.  "Policy terms should be viewed in their plain, ordinary and popular

connotations." *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354 (Nev. 1986).

Plaintiff's claims for breach of contract and breach of good faith turn on the interpretation of two clauses of the insurance contract because the policy requires Plaintiff to fulfill certain requirements for Defendant's duties to arise. The Court addresses each clause in turn.

### 1. Cooperation

In order to recover benefits, Plaintiff's policy requires Plaintiff to cooperate with Defendant's investigation and to satisfy other coverage conditions. The policy begins with a list of duties that anyone claiming coverage under the policy agrees to, including to notify Defendant promptly of any accident, "cooperate with [Defendant] and assist [Defendant] in any matter concerning a claim or suit . . . authorize [Defendant] to obtain medical, employment, vehicle and other records and documents as we request, as often as we reasonably ask," and help Defendant with "securing and giving evidence" when asked. (Policy, Ex. A to Def. MSJ 19, ECF No. 17). The policy further states under general conditions: "6. Cooperation. Any person claiming any coverage under this policy must cooperate with us in the investigation, settlement and defense of any claim or lawsuit." (*Id.* at 25).

"When an insurance policy explicitly makes compliance with a term in the policy a condition precedent to coverage, the insured has the burden of establishing that [he or she] complied with that term." *Las Vegas Metro. Police Dep't. v. Coregis Ins. Co.*, 256 P.3d 958, 962 (Nev. 2011); *Schwartz v. State Farm Mut. Auto. Ins. Co.*, No. 2:07–cv–00060–KJD–LRL, 2009 WL 2197370, at *7 (D. Nev. July 23, 2009) ("Nevada law clearly enforces coverage conditions . . . .").

The clear and unambiguous terms of Plaintiff's insurance contract with Defendant imposed certain obligations, such as Plaintiff's obligation to cooperate with Defendant's

investigation of his claim.  After Defendant received notice from Plaintiff that he would be pursuing an uninsured motorist claim, Defendant began to investigate the claim, including Plaintiff's injuries.

On May 1, 2012, Defendant notified Plaintiff that it needed additional information, such as the names and addresses of Plaintiff's medical providers for the past five years and his workers' compensation file. (Ex. T to Def. MSJ 121).  Although Plaintiff had previously provided some of this information on November 7, 2011, (*see* Ex. Q to Def. MSJ 94–104), this request by Defendant was more specific.  The documents originally provided by Plaintiff included a report of medical bills with names of providers dating from March 3, 2009 through May 19, 2010; however, some of the names are partially cut off, and no addresses are provided. (*Id.* at 100–104).  Further, while this report was apparently Plaintiff's workers' compensation ledger according to A&P's cover letter, the report is titled "Abstract: Payment History by Paycat" and there is nothing on the report itself to indicate that it is connected with the workers' compensation claim. (*See id.* at 94).  Certainly, this Abstract cannot be considered the full workers' compensation file.

Although Defendant sent the same May 1, 2012 letter again July 17, 2012, (Ex. U to Def. MSJ 128), and purportedly attempted to contact A&P by phone several times, (Ex. V to Def. MSJ 135), Defendant never received anything further from Plaintiff.  As such, Defendant sent Plaintiff a letter on November 13, 2012, to close Plaintiff's case. (*Id.*).  Defendant still did not hear back from Plaintiff until it received Plaintiff's complaint over two years later on February 23, 2015.

Plaintiff does not present any evidence to support its claim that a genuine issue of fact remains regarding his cooperation.  Plaintiff's exhibits in response to Defendant's motion include A&P's retention letter dated February 9, 2011, providing Defendant with formal notice of Plaintiff's "Underinsured Motorist Bodily Injury claim" (Ex. 1 to Pl. Resp. 2, ECF No. 20-

1), along with A&P's letter to Defendant dated November 7, 2011 (Ex. 2 to Pl. Resp. 2, ECF No. 20-2).[5]  Neither of Plaintiff's exhibits demonstrate that Plaintiff continued to cooperate and provide Defendant with the information requested on May 1, 2012, and again on July 17, 2012. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.").

Rather, the evidence, even when viewed in the most favorable light, belies Plaintiff's contentions.  Plaintiff argues that Defendant "never sent the policy terms to which they were requesting compliance." (Pl. Resp. 3:20–21, ECF No. 20).  However, Defendant sent Plaintiff a letter confirming that Defendant "provided a certified copy of [Plaintiff's] insurance policy." (Ex. I to Def. MSJ 67).  Plaintiff provides nothing to contradict this statement.  Further, even though the policy was sent to Plaintiff prior to A&P's retention as Plaintiff's counsel, A&P's retention letter is their only correspondence to request any details about the policy. (*See supra* Note 3); (*see also* Exs. Q, S to Def. MSJ 94, 108) (subsequent letters from A&P that do not request any policy information).

Similarly, Plaintiff contends that Defendant "failed to make any offer" on Plaintiff's claim. (Pl. Resp. 4:17–25).  The evidence provided, however, demonstrates only that Defendant was actually the one awaiting and expecting Plaintiff's demand. (*See* Ex. Q to Def. MSJ 94) (letter from A&P stating, "We will be submitting our demand shortly."); (*see also* Ex. R to Def. MSJ 106) (Defendant's response to A&P's letter stating, "As you advised your office is

---

[5] Plaintiff's Exhibit 1 is identical to the letter provided by Defendant in Exhibit O, except that Plaintiff provides a second copy, also identical, except dated January 6, 2011. (Ex. 1 to Pl. Resp. 2).  Similarly, Plaintiff's Exhibit 2 is identical to the letter provided by Defendant in Exhibit Q, except that it also includes a fax transmission report and a letter from A&P to Plaintiff forwarding the documents requested by Defendant. (Ex. 2 to Pl. Resp. 3–4).  Interestingly, this letter from A&P to Plaintiff is dated May 21, 2012, which is after the date upon which Plaintiff appears to have stopped responding to Defendant, yet the completed forms also attached therein and purportedly signed by Plaintiff are dated November 7, 2011. (*Id.* at 4, 11–12).  The Court cannot find, nor does Plaintiff argue, that this letter's date provides proof of contradictory evidence regarding Plaintiff's cooperation with Defendant's investigation.

gathering supporting documentation for the demand package.  We look forward to receiving this in hopes of reaching an amicable settlement.").  Plaintiff did not cooperate with Defendant, and therefore, he failed to comply with the clear terms of the insurance contract.  Accordingly, Plaintiff is precluded from bringing the instant action.

### 2.  Commencement of Legal Action

Plaintiff's insurance contract with Defendant also precluded Plaintiff from bringing legal action until Plaintiff had fully complied with any obligations under the contract.  The contract states in relevant part: "9. Suit Against Us. We may not be sued unless all the terms of this policy are complied with." (Policy, Ex. A to Def. MSJ 25).

Under Nevada law, if an insurance contract plainly states that an insured may not bring a lawsuit against an insurance provider until all terms of the contract are satisfied, then, simply, an insured may not bring a lawsuit against his or her insurance provider until he or she satisfies any conditions of coverage. *See Las Vegas Star Taxi, Inc. v. St. Paul Fire & Marine Ins. Co.*, 714 P.2d 562, 562–63 (Nev. 1986) ("Indeed, the policy not only specifies that notice is a condition of coverage, it also provides that no legal action may be brought against the insurer unless the insured has complied with the contract terms.  The policy is unambiguous in this regard.").

The clear terms of Plaintiff's policy required him to cooperate with Defendant's request in evaluating his claim, and Plaintiff failed to do so. (*See supra* Part III.A.).  The contract also states that an insured is precluded from bringing a lawsuit unless he or she complies with certain conditions, including the obligation to cooperate with the insurer's requests to produce information necessary to fully evaluate the claim.  Accordingly, Plaintiff is barred from bringing suit, and Defendant is entitled to summary judgment.

**IV.**     **<u>CONCLUSION</u>**

   **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 17) is **GRANTED**.

   **DATED** this __22__ day of March, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Court